IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

IN RE:                                    )
                                          )
KATHY KAY TYLER,                          )    Case No. 09-60916
                                          )
                    Debtor.               )

ORDER DENYING MOTION TO
QUIT CLAIM PROPERTY TO LENDER OR TO CITY [Doc. #37]

Debtor Kathy Kay Tyler filed a voluntary Chapter 13 case on April 29, 2009.

On June 8, 2009, the City of Springfield filed a Proof of Claim in the case, asserting

a secured claim in the amount of $4,502.52 for "City of Springfield Special Ordinance

No. 25338," secured by real estate at 635 South Nettleton Avenue in Springfield,

Missouri, perfected by a "Special Tax Bill to be issued November, 2009."[1]  This is a

tax assessment relating to the City's connecting the property to its sewer and water

systems, although it is not clear whether the claim represents a pre- or post-petition

obligation.   On June 17, 2009, the Debtor filed an Amended Chapter 13 Plan

proposing to surrender the Nettleton property to the secured lender on the property,

BAC Home Loans Servicing (f/k/a Countrywide Home Loans), in lieu of her entire

debt to BAC.[2]   The Debtor also objected to the City's claim as a secured claim, due

---

[1]  Claim No. 3.

[2]  *Chapter 13 Plan and Plan Summary for Cases Filed on or After October 17, 2005,* as
amended June 17, 2009 [Doc. #20], confirmed by Order entered July 9, 2009.

to her surrendering the property to BAC.[3]  The Debtor's plan, which provided no treatment for the City's claim, was confirmed on July 9, 2009.

In its July 15 response to the Debtors' objection to its claim, the City maintained that, despite the plan's surrender of the property to BAC, BAC has not foreclosed or done anything to take title to the property in its name.  The City further argued that, since the Debtor is the record owner of the property, she is responsible for assessments against it and, further, the City still has a secured claim against the property.

Because the City did not appear at the hearing on the Debtor's objection to its claim, I sustained the objection.[4]  Consequently, it need not be treated as a secured claim through the plan.  However, the Debtor requests that I give additional effect to her surrender of the property by ordering that either BAC or the City accept a quit claim deed from her or somehow otherwise absolve her from ongoing liability as the record owner of the property.  BAC asserts that, even though the Debtor has surrendered the property in lieu of its debt, it cannot be forced to foreclose or otherwise take title to the property.  The City asserts that, until title is transferred to BAC, the Debtor remains liable for ongoing taxes and maintenance as the owner of

---

[3]  [Doc. #19].

[4]  *Order of the Court Sustaining the Debtor's Objection to Claim Number 3 of City of Springfield* [Doc. #50].

2

the property.

Section 1325(a)(5) provides that the Court shall confirm a plan if, *inter alia*, with respect to each allowed secured claim provided for by the plan, the holder of such claim has accepted the plan, the plan effectively provides for the holder of the claim to retain the lien and receive full payment of the claim, or the debtor surrenders the property securing such claim to such holder.[5]  As stated, the Debtor has chosen the third option – to surrender the property.  Without question, the Bankruptcy Code expressly allows the Debtor to surrender such property, and her proposal to surrender would not have been a proper ground for BAC to object to the plan.[6]  The question here is what is the effect of the Debtor's surrender of the property?

As BAC points out,  conveyances of land in Missouri are generally made by deed,[7] and acceptance is necessary to the validity of the deed.[8]  Further, Missouri has

---

[5]  11 U.S.C. § 1325(a)(5).

[6]  The confirmed plan actually provides for surrender of the property in lieu of the entire debt, which means that BAC will have no deficiency claim against the Debtor in the event that it decides to foreclose.  BAC could have objected to that surrender in lieu, and in that case, would have been entitled to an unsecured claim for any deficiency after foreclosure.

[7]  *See, e.g.,* Mo. Rev. Stat. § 442.020. ("Conveyances of lands, or of any estate or interest therein, may be made by deed executed by any person having authority to convey the same, or by his agent or attorney, and acknowledged and recorded as herein directed, without any other act or ceremony whatever.").  Conveyances may also be made by devise, upon intestacy, and in condemnation, but "the most common form of property transfer is by deed." 18 Mo. Prac., Real Estate Law – Transactions § 3:1 (3d ed.).

[8]  *Ragan v. Ragan*, 445 S.W.2d 825, 826 (Mo. 1969).  However, acceptance may be shown by acts and conduct of the grantee.  *Id.  See also* 18 Mo. Prac., Real Estate Law –

adopted the "lien theory" on mortgages.[9]  Hence, "[t]he ownership of a deed of trust

on property does not constitute ownership of the title to the property."[10]  "The grantor

of the deed of trust continues as owner of the land until entry for breach of condition,

and then foreclosure under power of sale."[11]  Further, "until final foreclosure, the

mortgagor continues [to be] the owner of the estate."[12]  Under Missouri law, therefore,

the Debtor remains the owner of the property until a secured creditor becomes the

owner by either accepting a deed from the Debtor or foreclosing.

Thus, the question is whether the Debtor's surrender of the property in her

bankruptcy case changes the effect of Missouri law.  The Bankruptcy Code does

permit debtors to alter certain contractual and state court relationships. The Court in

*In re Service* held, however, that "surrender" does not equate to a transfer of

ownership.[13]  Rather, "surrender" contemplates a mutual agreement between the

parties: "[a]lthough the [d]ebtors have provided for satisfaction of [the creditor's]

---

Transactions § 3:18 (3d ed.) ("Acceptance is the act that makes delivery [of a deed] irrevocable .
. . . The concept of deed acceptance is consistent with the concept of the deed as contract.").

[9]  *In re Koeller*, 170 B.R. 1019, 1022 (Bankr. W.D. Mo. 1994).

[10]  *Id.*

[11]  *Id.* at 1023 (*quoting Tipton v. Holt*, 610 S.W.2d 659, 661 (Mo. Ct. App. 1981)).

[12]  *Id.* (*quoting Lustenberger v. Hitchinson*, 119 S.W.2d 921, 928 (Mo. 1938)).  *See also
Gempp v. Teiber*, 173 S.W.2d 651, 653 (Mo. Ct. App. 1943).

[13]  155 B.R. 512 (Bankr. E.D. Mo. 1993).

4

secured claim by surrendering its collateral, absent [the creditor's] consent, [d]ebtors may not compel this creditor to accept surrender or enforce its rights and take title to the realty."[14] "Whether to proceed with its remedies is within the sole discretion of [the creditor], and [d]ebtors may not compel [the creditor to] enforce its rights."[15]

Further, although the Debtor has attempted to transfer possession of the property by moving out and turning keys over to BAC, abandonment under § 554(a)[16] contemplates that the abandonment be to parties with possessory interest in the property (typically the debtor) and, again, does not require parties who are not in possession to take such possession.[17]  In other words, "[t]he Code does not authorize such a transaction under the guise of abandonment."[18]  As a result, the Court finds no authority under which to force either BAC or the City to take ownership of the property.

As to BAC, the effect of that conclusion is simple:  by surrendering the property, BAC has been given the remedy of receiving its collateral in satisfaction of

---

[14] *Id.* at 514.  *Accord In re Koeller*, 170 B.R. at 1023.

[15] *Id.*

[16] 11 U.S.C. § 554(a) provides that, "after notice and hearing, the trustee [or debtor in possession] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."

[17] *In re Service*, 155 B.R. at 514-15.

[18] *Id.* at 515.

its secured claim pursuant to § 1325(a)(5)(C).[19]  Further, since the surrender was in

lieu of the entire debt, BAC cannot seek a deficiency against the Debtor.  For all

practical purposes, the Debtor is finished with BAC.[20]

As to the City and others, however, the issue is a little more complicated.  As

stated above, the Court sustained the Debtor's objection to the City's secured claim.

As a result, to the extent that claim was for prepetition assessments, which is still

unclear, the claim has been denied and need not have been treated in the plan.

However, as the record owner of the property, the Debtor remains liable for ongoing

taxes, City assessments, and maintenance in compliance with City codes.[21]  She could

---

[19]  *Id.* at 514.

[20]  In *In re Carter*, 390 B.R. 648 (Bankr. W.D. Mo. 2008), I cited *In re Stone*, 166 B.R. 621 (Bankr. S.D. Tex. 1993), for the proposition that surrender is "a return of property and a relinquishing of possession or control to the holder of the claim," and "does not require a debtor to transfer title by executing and delivering a deed."  No one disputes that the Debtor has meaningfully surrendered in this case; indeed, the Debtor would prefer to take her surrender one step further and transfer title.  However, the issue of whether the *debtor* has done what he or she is supposed to do in order to meaningfully surrender is a different issue than whether the *creditor* must accept the transfer of title or possession of the surrendered property.  *See also* 8 Collier on Bankruptcy ¶ 1325.06[4] at 1325-46 ("There is also no requirement that the creditor consent to the surrender or actually accept possession of the collateral.") (citations omitted); *In re White*, 282 B.R. 418 (Bankr. N.D. Ohio 2002) (holding that surrender under § 1325(a)(5)(C) does not require the creditor's consent to be effectual, but does not provide for the court or the debtor to direct the means by which the secured creditor deals with the surrendered property; rather, surrender "functions as both the debtor's consent to relief from stay and with respect to real property and personal property that is subject to certificates of title, estoppel of the right to defend in any foreclosure proceeding or a prospective confession of judgment in any such case.").

[21]  *See, e.g.,* Mo. Rev. Stat § 137.075 ("Every person owning or holding real property . . . on the first day of January . . .  shall be liable for taxes thereon during the same calendar year.").

also be liable for personal injury on the property.   The courts in *Service* and *Koeller* both so held.[22]

I recognize, as Debtor's counsel points out in her brief, that this situation has become increasingly common in the current economic climate and that it creates problems for debtors seeking a fresh start through bankruptcy.   It also creates problems for communities and cities having to deal with abandoned properties. However, I simply find no authority, under either Missouri law or bankruptcy law, to do what the Debtor asks me to do here.   And, as BAC points out, there are counterbalancing policy considerations in these situations as well – forcing lenders to take ownership of property after a borrower defaults exceeds the benefit of the bargain in making the loan.   Further, doing so might result in a chilling effect on lenders making loans, particularly if the creditor perceives itself at risk of acquiring title to less-than-desirable property in the even that the borrower defaults.   In any event, if

---

[22] *In re Koeller*, 170 B.R. at 1022 (holding that, not only was a special tax bill for demolition charges following a fire a lien on the property, the debtor was also personally liable for such charges as the owner of the property, even though the debtor had surrendered the property and the creditor had obtained relief from stay); *In re Service*, 155 B.R. 512 (holding that the debtor could not force the creditor to take ownership, recognizing that the result would be that the debtors were at "risk of liability for taxes, personal injury, housing violations, etc."). Further, by way of comparison, see *Midlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (holding that, despite the Bankruptcy Code's authorization for trustees to abandon burdensome property, a trustee could not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from hazards). However, since the Debtor's obligation to BAC has been entirely extinguished, she would not be liable to BAC for failing to insure the property.

7

there is a workable solution to this problem, it will be up to the legislature to create it.

ACCORDINGLY, the Debtor's Motion to Quit Claim Property to Lender or to City [Doc. #37] is DENIED.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 9/30/2009